UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60255-CIV-COHN/SNOW

RICHARD BECKER and
KAREN BECKER,

    Plaintiffs,

vs.

HARKEN, INC.,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT HARKEN, INC.'S MOTION FOR FINAL SUMMARY JUDGMENT

This cause is before the Court upon Defendant Harken, Inc.'s Motion for Final Summary Judgment [DE 53]. The Court has carefully considered the Motion, Plaintiffs' Response [DE 60], Defendant's Reply [DE 63], oral argument heard by the undersigned on February 2, 2007, and the underlying record in this case, and is otherwise fully advised in the premises.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Richard Becker ("Plaintiff")[1] was injured on May 21, 2004 when a fiddle block, manufactured by Defendant Harken, Inc. ("Defendant"), failed during normal use on board Plaintiff's vessel.[2] (Resp., p. 1 [DE 60].)  Plaintiff was performing maintenance

---

[1] Unless otherwise noted, reference to Plaintiff refers to Plaintiff Richard Becker, not Plaintiff Karen Becker.

[2] During oral argument, Plaintiff's counsel used the fiddle block as a demonstrative aid.  The block essentially contains pulleys or sheaves which are used to raise and lower lines on the vessel.  In this case, Plaintiff's counsel explained that a shackle, or metal fastener, was attached to the fiddle block which in turn was connected to a cloth chair.  A line was run through the pulley on the block and used to hoist

on the mast of the sailboat when the block or the attached shackle allegedly failed, causing him to fall to the deck below. (Id.; Amended Compl., ¶ 8 [DE 1].)[3]  It is undisputed that at the time of the incident, the vessel was docked in a canal off the Intracoastal Waterway in Broward County, Florida.  (Reply, p. 2.)

Plaintiffs filed this case in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida on January 19, 2006 alleging the following three counts against Defendant[4]: 1) Negligence (Count I) alleged by Plaintiff Richard Becker; 2) Strict Liability - Products Liability (Count II) alleged by Plaintiff Richard Becker; and 3) Loss of Consortium/Loss of Services (Count III) alleged by Plaintiff Karen Becker.  Defendant removed the action under this Court's diversity jurisdiction on February 28, 2006. Defendant now moves for summary judgment alleging that the action is time-barred by Florida's statute of repose.

## II.  SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.

---

Plaintiff, who was sitting on the chair, to the top of the mast of his sailboat.

[3] As discussed more fully in Section III.A herein, during oral argument, Plaintiff's counsel stated for the first time that it was the shackle, not the block itself, which failed.

[4] The initial case included Defendant Norvan Partnership who was voluntarily dismissed without prejudice on April 4, 2006 [DE 16].

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

III. ANALYSIS

The sole issue raised in Defendant's Motion is whether Florida's statute of repose, Fla. Stat. § 95.031(2)(b), serves to bar Plaintiffs' action. Plaintiffs argue that the statute of repose does not apply in this instance because maritime, not Florida law, governs this action. Florida's statute of repose states:

> An action for products liability under § 95.11(3) must be begun within [the statute of limitations] prescribed in this chapter, with the period running from the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence, rather than running from any other date prescribed elsewhere in § 95.11(3), except as provided within this subsection. Under no circumstances may a claimant commence an action for products liability, including a wrongful death action or any other claim arising from personal injury or property damages caused by a product, to recover for harm allegedly caused by a product with an expected useful life of 10 years or less, if the harm was caused by exposure to or use of the product more than 12 years after delivery of the product to its first purchaser or lessee who was not engaged in the business of selling or leasing the product or of using the product as a component in the manufacture of another product.

Since all three counts contained in the Amended Complaint arise from the fact that Plaintiff was injured by the alleged malfunction of the fiddle block manufactured by Defendant, all counts are barred by Florida's statute of repose if it is determined that the statute applies in this case.

## A. Remaining Issues of Fact

Before reaching the merits of Defendant's Motion, the Court must determine whether there are any remaining issues of material fact. Defendant provides the Court with uncontroverted evidence, including an affidavit of Peter Harken, President of Harken, Inc., which establishes that the fiddle block was manufactured and placed into the market no later than 1979, clearly more than 12 years prior to the incident at issue. (Harken Aff., Mot. Exh. B [DE 53].) Although Plaintiff does not contest that the fiddle block itself was manufactured pre-1980, during oral argument, Plaintiff argued that the

4

shackle attached to the fiddle block, not the fiddle block itself, failed and caused the fall. Plaintiff relied on the deposition testimony of Peter Harken to argue that a genuine issue of fact exists as to when the shackle was manufactured. The relevant testimony states:

> Q:  I asked you before if you had a – could you provide a specific – have been able to determine the specific date of manufacture of the blocks shown here in Exhibit No. 2, and you gave me a time frame before 1979 I think.  Have you determined the date of manufacture of the shackles?
>
> A:  No, not the shackle that's on this block.  I couldn't tell you.
>
> Q: Do you know if it's of a vintage similar to the date of the manufacture of the block or –
>
> A: I would say it's very close.  The sailing industry is not a big industry so we don't – no one in our industry makes millions of stuff.  It's thousands, maybe hundreds.  So the shackle manufacturer, since this is basically a shackle for the sailing industry, may have made 5,000 at a time and so on.  So there isn't a huge supply that would sit around for ages and ages, probably made in the same year that it's sold.

After reviewing the deposition, the Court finds that there is no issue of genuine material fact. Although the parties may not be able to ascertain the exact year the shackle was manufactured, it is undisputed that the shackle was manufactured at roughly the same time as the fiddle block, and in any event, pre-1980. Since 1980 is well outside Florida's 12-year statute of repose, the Court finds that identifying the exact year of the shackle's manufacture is not a material issue of fact for purposes of the instant Motion. As such, there are no genuine issues of material fact and the Court shall decide the issues of law raised in Defendant's Motion.

### B.  Choice of Law - Whether Admiralty or State Law Applies

The first issue for the Court to decide is whether admiralty or Florida state law applies to the instant action. Federal district courts have original jurisdiction over admiralty and maritime matters, however the "saving to suitors clause" vests state courts with concurrent jurisdiction. Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1321

n.1 (11th Cir. 1989).  Litigants have the option of litigating cases under maritime law while receiving a jury trial by either filing the action in state court or on an independent basis of jurisdiction in federal court.  Continental Cas. Co. v. Canadian Universal Ins. Co., 605 F.2d 1340, 1344 (5th Cir. 1979).[5]  Regardless of where and under what jurisdictional basis the plaintiff elects to file the action, a case which falls within the purview of this Court's admiralty jurisdiction is governed by general maritime law.  Id.; Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628 (1959); see also Keefe, 867 F.2d at 1320-21.  As such, contrary to typical Erie choice of law issues, whether the Court is to rely on state or federal law in determining the rights of the parties is not affected by the fact that this case is in this Court on the basis of diversity jurisdiction.  Continental, 605 F.2d at 1320-21.  Rather, the Court is tasked with evaluating whether this case arises from conduct that is within the reach of admiralty jurisdiction and measurable by maritime law standards.  Kermarec, 358 U.S. at 408.

   To determine whether this case falls within the Court's admiralty jurisdiction the Court must decide whether the facts satisfy conditions of location and connection with maritime activity.  Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995).  First, applying the location test, the Court must determine "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water."  Id.  As noted by the Eleventh Circuit in Mink v. Genmar Indus., Inc., "[e]very species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance."  29 F.3d

---

[5] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the Circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

1543, 1545 (11th Cir. 1994). Here, the parties do not dispute that the incident occurred while Plaintiff was on his boat on navigable water thereby satisfying the location test.

Whether the facts of the instant matter satisfy the connection test is less clear. The connection test requires a two-part inquiry. The Court must assess: 1) whether the general features of the type of incident involved have a "'potentially disruptive impact on maritime commerce;'" and 2) "'whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.'" Alderman v. Pacific Northern Victor, Inc., 95 F.3d 1061, 1064 (11th Cir. 1996) (quoting Grubart, 513 U.S. at 534). Defendant argues that the connection test is not met. A review of Eleventh Circuit decisions in this area reveals that the connection test is satisfied in this case.

The first part of the inquiry is not whether the incident actually disrupted maritime commerce, but whether the general characteristics of the accident had a "'potentially disruptive impact on maritime commerce.'" Grubart, 513 U.S. at 534 (quoting Sisson v. Ruby, 497 U.S. 358, 362 (1990)); see also Mink, 29 F.3d at 1546. "Unsafe working conditions aboard a vessel have consistently been held to pose a potentially disruptive impact upon maritime commerce." Lambert v. Babcock & Wilcox, Co., 70 F. Supp. 2d 877, 884 (S.D. Ind. 1999) (citing Alderman, 95 F.3d at 1064). In Alderman, a worker was injured when he slipped and fell on oil that leaked from a machine on the vessel while installing an elevator on a oil drilling vessel docked on navigable waters. 95 F.3d at 1063. The Eleventh Circuit determined that the general features of the incident, namely "an onboard injury which occurred during the repair, maintenance or conversion of a vessel," had the potential to disrupt maritime commerce. Id. at 1064. The injury could have interrupted the use of the vessel at issue in the case as well as the path of other nearby vessels. Id.

Although the instant case involves a recreational vessel, rather than a commercial oil drilling vessel, the general characteristics of the accident are the same, injury suffered aboard a vessel undergoing repair or maintenance.  In deciding whether maritime commerce could be disrupted, it is irrelevant whether the vessel involved in the instant matter was recreational or commercial.  Neely v. Club Med Management Services, Inc., 63 F.3d 166, 179 (3d Cir. 1995).  Injury suffered aboard a vessel docked on a navigable waterway could disrupt maritime commerce by preventing other boats from docking in that area or requiring boats to detour around emergency rescue teams.  Use of the waterway could also have been restricted while the accident was under investigation.  Id.  Additionally, boats engaged in commerce may have been compelled to stop to offer assistance before the arrival of rescue workers.  As such, the Court finds that the first prong of the connection test is satisfied in this case.

The second part of the connection test inquiry is whether the incident is substantially related to traditional maritime activity.  Grubart, 513 U.S. at 534.  In Sea Vessel, Inc. v. Reyes, the Eleventh Circuit found that "[i]t is axiomatic that the routine repair of vessels is a crucial maritime activity."  23 F.3d 345, 350 (11th Cir. 1994) (citing Sisson v. Ruby, 497 U.S. 358, 367 (1990) ("maintenance of a vessel at a marina on navigable waters is substantially related to 'traditional maritime activity'")).  It follows, therefore, that Plaintiff's efforts to repair the mast aboard his vessel are substantially related to traditional maritime activity.  As such, the second prong of the connection test is also satisfied.  Therefore, admiralty law applies to this case.

### C.  Application of State Statute of Repose

The next issue is whether, even though maritime law governs this action, Florida's statute of repose applies to the case.  The exercise of admiralty jurisdiction "does not result in automatic displacement of state law."  Grubart, 513 U.S. at 545; Yamaha Motor

Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996). As stated by the Supreme Court, courts may apply state law "'absent a clear conflict with the federal [maritime] law.'" Ellenwood v. Exxon Shipping Co., 984 F.2d 1270, 1278-79 (1st Cir. 1993) (quoting Askew v. Am. Waterways Operators, Inc., 411 U.S. 325, 341 (1973)) (citing Romero v. Int'l Terminal Co., 358 U.S. 354, 373-75, 378 n.42 (1959); Just v. Chambers, 312 U.S. 383, 391 (1941)). Where neither statutory nor judicially created maritime principles answer a specific legal issue, state law may apply to an action in admiralty as long as it does not directly conflict with the principles of maritime law and does not frustrate the policy interest of having national uniformity in maritime actions. Coastal Fuels Marketing, Inc. v. Fla. Express Shipping Co., 207 F.3d 1247, 1251 (11th Cir. 2000); Pacific Merchant Shipping Ass'n v. Aubry, 918 F.2d 1409, 1425 (9th Cir. 1990)); Norwegian Cruise Lines, Ltd. v. Zareno, 712 So. 2d 791, 793 (Fla. 3d DCA 1998) (citing Southworth Machinery Co. v. F/V Corey Pride, 994 F.2d 37 (1st Cir. 1993)).

Under maritime law, the statute of limitations for all personal injury torts is three years from the date the cause of action accrues. 46 U.S.C. App. § 763a; Mink, 29 F.3d at 1547 ("In enacting § 763a, Congress intended to provide a uniform statute of limitations for all maritime personal injury and death torts"). It follows that state statutes of limitations for personal injury torts address exactly the same principle as § 763a and are therefore preempted by § 763a when a case is governed by admiralty law. Mink, 29 F.3d at 1547-48. However, a statute of limitations is not analogous to a statute of repose. "A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time." Servicios-Expoarma, C.A. v. Indus. Maritime Carriers, Inc., 135 F.3d 984, 989 (5th Cir. 1998). A statute of repose, on the other hand, "limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the

cause of action may not have yet accrued." Id.  In light of this distinction, state statutes of repose are not necessarily preempted by § 763a.

Lambert is the only case that the parties, and the Court, have identified which addresses the application of a state statute of repose to a case within admiralty jurisdiction.  Plaintiff relies on Lambert for the proposition that Florida's statute of repose should not apply to this case because it directly conflicts with admiralty law.  Defendant argues that Plaintiff's reliance on Lambert is misplaced because the Indiana statute of repose at issue in Lambert directly conflicts with 46 U.S.C. App. § 763a since it addresses a statute of limitations as well as a statute of repose.  The Court finds Defendant's argument more persuasive in that the language of Indiana's statute of repose is related, in part, to the same subject matter as the maritime statute of limitations.  Hence, the state law would yield to admiralty law.

In Lambert, the court found that Indiana's statute of repose did not apply because it conflicted with the uniform maritime statute of limitations.  70 F. Supp. 2d at 880.  Indiana's statute of repose states in relevant part:

> [A] product liability action must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer.  However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

IC 33-1-1.5-5 (1997).[6]  The Southern District of Indiana found that the Indiana statute of repose and 46 U.S.C. App. § 763a could not co-exist.  70 F. Supp. 2d at 887.  In so holding, the court cited White v. Mercury Marine, Div. of Brunswick, Inc., in which the Eleventh Circuit found that Florida's continuing tort theory could not be used to

---

[6] Indiana's statute of repose was amended in 1997 and IC 34-20-3-1 is now Indiana's statue of repose.  The earlier version of the statute, IC 33-1-1.5-5, applied in Lambert.  Regardless, the relevant portions of the statute were not amended in 1997.

10

supplement the interpretation of the word "accrue" as used in § 763a.  Id. at 887 (citing 129 F.3d 1428, 1431-32 (11th Cir. 1997)).  The court in White noted that "[t]he very existence of a federal general maritime statute of limitations implies that it should be applied uniformly across the nation.  The federal concern with balancing the interests of defendants and the court system in avoiding the problems caused by stale claims does not vary from state to state."  129 F.3d at 1431.

  The Court finds both Lambert and White distinguishable from the case at bar.  In both cases, the state law at issue was in direct conflict with the uniform maritime statute of limitations.  In Lambert, the Indiana statute under consideration served as both a statute of limitations and a statute of repose.  As such, applying the statute to an action in admiralty would directly conflict with § 763a.  Similarly, in White, applying Florida's continuing tort theory to change the interpretation of the word "accrue" in § 763a would undermine Congress's intent to have a uniform statute of limitations.  Since Lambert, the only related case, is clearly distinguishable from this case, the issue presented herein is one of first impression.

  In this case, Florida's statute of repose functions independently from Florida's statute of limitations.  As such, unlike the statute in Lambert, applying the statute of repose in this case would not directly conflict with § 763a.  See Servicios, 135 F.3d at 988-89 (evaluating difference between statutes of repose and statutes of limitations in finding COGSA, 46 U.S.C. App. § 1303(6), which acts as statute of repose, distinguishable from and able to co-exist with § 763a).  The statutes serve separate and distinct policy concerns and the time limitations prescribed by each respective statute accrue from entirely different events.  The remaining issue therefore, is whether applying Florida's statute of repose subverts the desire for uniformity in admiralty law.  Although the reliance on state statutes of repose may have some affect on uniformity in admiralty

law, it should not follow that a product manufacturer should be exposed to liability for an infinite number of years merely because its product makes it way onto a marine vessel. As such, since there is no federal statute of repose in admiralty and Florida's statute of repose does not expressly conflict with the uniform admiralty statute of limitations in § 763a, the Court finds that Florida's statute of repose applies to this action.

Florida's statute of repose bars product liability claims brought more than 12 years after the introduction of the product. The fiddle block and shackle at issue in this action were manufactured and sold for consumer use in or about the year 1979. Therefore, this case is time-barred as it was brought outside the statute of repose, and Defendant's Motion shall be granted.

## IV.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant Harken, Inc.'s Motion for Final Summary Judgment [DE 53] is **GRANTED**. The Court will separately enter final judgment in favor of Defendant.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 8th day of February, 2007.

JAMES I. COHN
United States District Judge

Copies to:

All counsel of record